McKinney, J.,
delivered the opinion of the Court.
This was an action on the case for fraud in the sale of a female slave. There was a recovery for $1,112.50.
• The case is peculiar in some of its features, and by no means free from difficulty.
It appears that the negotiation between Mrs. Cozart, the plaintiff below, and the" defendant, Smith, for the purchase of the girl in question, was conducted through one Lightfoot, the brother and agent of plaintiff.
*528 It further appears that Mrs. Cozart had raised the girl, and owned her until some time in the year 1858, when she sold her to Smith. Not long after said sale, Mrs. Cozart became anxious to re-purchase the girl, and, through her agent, frequently importuned Smith to assent to a re-sale. But up to the month of June, 1856, he uniformly refused to do so, saying that he was pleased with the girl. At the period just mentioned, in a conversation between Smith and Lightfoot, in regard to a house and lot in Jackson, of which Mrs. Cozart was a part owner, Smith proposed to purchase said property, if Lightfoot would take said negro girl at $1000, to which the latter assented; and a bill of sale was made to him, in his own name, for the slave. But the purchase being made for Mrs. Cozart, it was agreed between Lightfoot and Smith, a day or two after the contract, that said bill of sale should be cancelled, and that Smith should convey the girl directly to Mrs. Cozart, which was done accordingly. Lightfoot was examined on the trial, and proved that the proposal of Smith to sell the girl excited his suspicions that something was the matter with her, and he inquired of him if she was sound. Smith replied that “she had had a cough, and suppressed menstruation for some short time, which might possibly be caused by pregnancy; and spoke of it as not being a serious matter, and that it was temporary only.” Witness further stated, that upon this representation, on which he relied, the trade was made.
It is proved, that shortly after the purchase of the girl — within a week perhaps — Mrs. Cozart procured a physician to examine her; and he stated to the jury *529 that he found the girl had consumption, and, in his ■opinion, had been laboring under that disease for six or twelve months; that he so 'informed Mrs. Cozart, and expressed the opinion that the girl could not be cured, and was worthless. The slave died in the summer of 1857.
The memorandum, or bill of sale, executed by Smith to Mrs. Cozart, is as follows:
“ Received of Mrs. Mary Cozart- one thousand dollars in payment of a negro, Maria, she being the negro I purchased of her in 1852, or 1853. I consider the negro unhealthy, and sell her as unsound property, and do not warrant her sound. I convey to the said Mrs. Cozart such title as was vested in me by my purchase of the said girl from her.
JuNE -30, 1856. WM. G-. SMITH.”
It might seem, at first view, that the jury acted rashly in finding a verdict for the plaintiff in the face of the foregoing bill of sale; but an attentive consideration of the whole case will lead to a different conclusion.
The jury must have believed (and we cannot say that the belief was unwarranted) that Smith knew of the diseased and unsound condition of the slave at the time ofi the sale, and was therefore guilty, not only of suppression of the truth, but also of . intentional misrepresentation. The circumstances of the case must also have satisfied the jury that the sale of the slave to Mrs. Cozart was a meditated scheme of fraud. He was fully aware of her desire 'to re-purchase the .sjave. He must have known, or at least had sufficient reason to suppose, *530 that Mrs. Cozart, who had raised the slave, believed her to be sound, and therefore would be careless in respect to anything that might be inserted in the bill of sale as to her soundness. And the conviction forces itself upon the mind, that, in this view, the foregoing bill of sale was concocted and imposed on the plaintiff as a fraudulent artifice to shield the defendant against the consequences of a deliberate and detestable fraud. In this aspect of the case the verdict is well warranted.
It is admitted to be true, as a general proposition, that where the contract of sale is in writing, and contains no warranty, or a refusal to warrant, parol evidence is not admissible to superadd a warranty. But this statement of the general rule implies the absence of fraud in the transaction. For, as is said by an intelligent author, if it can be shown that the contract was induced by an oral warranty, which was false, to the knowledge of the party making it, and was made for the purpose of throwing the other party off his guard, and fraudulently obtaining his consent to the bargain, evidence of such verbal warranty is admissible. This is no infringement of the rule which forbids the introduction of parol evidence to contradict, vary, or add to a written instrument. The evidence is received not for that purpose; but, admitting the terms of the written contract, to show that the assent of the party to the contract was obtained by falsehood and fraud, and has therefore no legal existence. Addison on Contracts, 129, 130. The same principle applies in the case of false and fraudulent representations, made under like circumstances.
The stipulation that the slave was sold as “unsound *531 property,” was, in itself, an exclusion of all warranty, and, in the absence of fraud, would protect the defendant from all liability. But such a stipulation is no protection against fraud, nor will it prevent the sale from being avoided on proof of fraud._ The seller will not be permitted to make use of such an artifice to cover the perpetration of a fraud, and exonerate himself from the consequences. Such a stipulation will be of no avail where the seller has been guilty of a wilful and intentional false representation or concealment, or has resorted to any contrivance to deceive and mislead the purchaser. Ibid., 132, 133; 1 Parsons on Contracts, 473.
It follows, therefore, that the statements of the bill of sale, that the slave was sold as unhealthy, unsound, and without warranty, must be regarded as avoided by fraud; and the case must stand upon the false and fraudulent representations, on the faith of which the purchase of the slave is proved to have been made.
On the subject of damages, the Court stated to the jury, “ that the criterion of damages, if the slave was. entirely worthless, was the value or sum paid for the negro, and interest, if the jury thought proper to allow it.”
This is a confused and inaccurate statement of the rule of damages applicable to the case.
The slave not having been returned, nor offered to be returned, the proper measure of damages was the difference in value between the slave, if in the condition in which she was represented to be at the time of the sale, and her then actual condition; and not, as the Court assumed, either the value of the slave or the price paid for her. But we think this error of the *532 Court does not so “affect the merits of the judgment” as to justify us in reversing it under section 4516, of the Code.
The verdict would, perhaps, have been the same upon a correct charge. It being proved that the slave was really valueless at the time of the sale, it was the duty • of the jury to inquire, as the proper criterion of dam.ages, what would have been the value of the slave if merely laboring under the slight temporary indisposition .represented by the defendant. And it is certainly true, that the price paid by the plaintiff was by no means .conclusive evidence of what the value of the slave would Rave been if in the condition represented. Yet, as it was the value as estmiated by the parties at the time, the jury were at liberty to regard it as at least persuasive, perhaps it might he said as sufficient, evidence •of the value, in an action against the defendant grounded upon intentional fraud.
In this view, we think the error does not affect the Judgment, and it is affirmed.